UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 1:22-cv-24056

JACQUELINE BERMAN,

    Plaintiff,

v.

CELEBRITY CRUISES, LTD.,

    Defendant.

_____/

**COMPLAINT FOR DAMAGES
AND DEMAND FOR TRIAL BY JURY[1]**

Plaintiff, JACQUELINE BERMAN (hereinafter "BERMAN"), through undersigned counsel, sues Defendant, CELEBRITY CRUISES, LTD., (hereinafter "CELEBRITY"), and demands trial by jury, stating as follows:

**PARTIES AND JURISDICTION**

1. BERMAN seeks damages in excess of $75,000.00, exclusive of interest, costs, and attorneys' fees.

2. This Court has admiralty and maritime jurisdiction pursuant to 28 U.S.C. § 1333.

3. This Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332, as the matter in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs, and is between citizens of different states and/or citizens of a state and citizens or subjects of a foreign state.

4. Suit is filed in federal court because of the federal forum selection clause in the passenger contract ticket issued by CELEBRITY.

---

[1] When this complaint refers to a numbered paragraph, such as "paragraph 16" for example, unless otherwise stated, it is referring to the corresponding numbered paragraph of this complaint.

5. BERMAN is *sui juris* and is a resident and citizen of the state of Florida.

6. CELEBRITY is a citizen of the state of Florida and the nation of Liberia.

7. CELEBRITY is a foreign corporation that is authorized to conduct and that does conduct business in the state of Florida, that at all times material hereto was and is doing business in Miami-Dade County, Florida, and that maintains its corporate headquarters and principal place of business in Miami-Dade County, Florida.

8. CELEBRITY, at all times material hereto, personally and/or through an agent, in Miami-Dade County, Florida, in the Southern District of Florida:

   a. Operated, conducted, engaged in, or carried on a business venture; and/or

   b. Had an office or agency; and/or

   c. Engaged in substantial activity; and/or

   d. Committed one or more of the acts stated in Florida Statutes, §§ 48.081, 48.181 or 48.193.

9. All conditions precedent for filing and maintaining this action have been fulfilled, have been waived, or do not apply.

## FACTUAL ALLEGATIONS

10. At all times material hereto, CELEBRITY owned, leased, chartered, operated, maintained, managed, and/or controlled the subject cruise ship, *the Summit*.

11. At all times material hereto, CELEBRITY owned, leased, chartered, operated, maintained, managed, and/or controlled the subject area and the lounge chair(s) involved in BERMAN'S incident.

12. BERMAN'S incident occurred on or about October 30, 2022, while she was a fare paying passenger on CELEBRITY'S vessel, *the Summit*.

13. On or about October 30, 2022, at approximately 12:00 p.m., as BERMAN and her traveling companion traversed deck 10 in a normal and proper manner, BERMAN tripped and fell over a lounge chair.

14. Unbeknownst to BERMAN, the subject lounge chair was out of place.

15. As a result, BERMAN sustained severe injuries that include, but are not limited to, fractured rib(s) and a traumatic brain injury.

16. At all relevant times, the dangerous and/or risk creating conditions include, but are not limited to the following:

   a. The subject lounge chair's unreasonable protrusion into the walking area, both because it was misplaced, because it slid around too easily, because the lounge chair itself was unreasonably large and part of it protruded further than a reasonable lounge chair should or that a reasonable person would expect, and for other possible reasons, which caused BERMAN'S incident and injuries because she tripped over the subject chair.

   b. There were no reasonable safety measures such as reasonable places BERMAN could grab in the subject area during her fall, which caused BERMAN'S injuries to be more severe, since if she was able to grab onto something reasonable during her fall, she would have been able to mitigate her injuries, as her fall would not have been as severe, and her injuries would therefore not have been as severe.

   c. The surface of the ground BERMAN fell onto was unreasonably hard, which caused her injuries to be more severe than they otherwise would have been.

   d. The visual condition of the surface, including the lines and monochrome/bland

    colors, was such that it blended visually with the chair, which had similar colors and visual design, and therefore was difficult for a reasonable person to discern any obstruction prior to BERMAN'S fall, thereby causing BERMAN to not see the subject lounge chair, thereby causing her to trip over the subject lounge chair.

e. Other dangerous conditions which will be revealed during discovery.

f. There were crewmembers in the subject area, but these crewmembers failed to adequately keep the subject lounge chair in the location it was supposed to be so that it would not be protruding into the walking path passengers would take as they navigated through the area, which cause BERMAN'S incident because she tripped over the subject loung chair.

g. The lounge chair that caught onto BERMAN was improperly placed by a CELEBRITY crewmember prior to the incident in the subject area which caused BERMAN'S incident because she tripped over the subject lounge chair.

h. There was an unreasonable number of passengers, over ten, in the subject area, which was caused by CELEBRITY'S crewmembers' failure to control the crowd of these passengers such that an acceptable number of passengers were in the subject area. This caused BERMAN'S incident and injuries because the crowd prevented her from seeing the subject lounge chair, and therefore caused her to trip over the subject lounge chair.

17. Each of these dangerous conditions was a sufficient cause of BERMAN'S incident and injuries, each of these conditions caused BERMAN'S incident and injuries, and BERMAN is alleging that CELEBRITY was negligent as to each of these conditions in the alternative.[2]

18. CELEBRITY either knew or should have known of these risk-creating and/or dangerous conditions, due to reasons that include, but are not limited to, the following:

   a. Before the incident, CELEBRITY'S crewmembers positioned the lounge chairs on the pool deck, including the subject lounge chair, such that they would not protrude out into the walking area of passengers, and/or CELEBRITY has policies/procedures requiring its crewmembers to position the chairs in this safer manner, which shows that CELEBRITY knew or should have known that lounge chairs such as the subject lounge chair should not have been protruding into the walking paths of passengers, and therefore the crewmembers in the subject area should have correctly positioned the subject lounge chair and returned it to its proper location prior to BERMAN'S incident.

   b. There was a warning sign in the subject area that stated that passengers should "watch your step." However, this warning sign was positioned behind the subject lounge chair such that neither BERMAN nor any reasonable person could reasonably see or appreciate it prior to BERMAN'S fall from the direction BERMAN approached the subject lounge chair from.

   c. Furthermore, BERMAN observed at least two CELEBRITY crewmembers in the subject area at the time of the incident, and these crewmembers were in the immediate

---

[2] A sufficient cause means a cause that, acting alone, is sufficient to cause an effect. (https://www.verywellhealth.com/understanding-causality-necessary-and-sufficient-3133021). In this case, this means that each dangerous conditions BERMAN has alleged alone was a cause of his incident such that the only way CELEBRITY could have prevented BERMAN'S incident was to have adequately warned of or remedied each of these conditions.

vicinity, such that BERMAN reasonably infers that these crew members regularly used, observed, and tended to the subject area, and therefore were or should have been aware of the dangerous and/or risk-creating conditions discussed in paragraph 16, and should have adequately warned of and/or removed these conditions.

d. CELEBRITY participated in the installation and/or design of the subject area, or alternatively, CELEBRITY accepted the area with its design defects present after having been given an opportunity to inspect the ship and materials on it, including the subject area, such that CELEBRITY should have known of the design defects of the subject area before providing it for public use. These design defects include, but are not limited to, the dangers outlined in paragraph 16(a-e).

e. There are relevant safety standards/recommendations/other guidelines regarding the safety of the subject area, including, but not limited to, prohibitions and/or recommendations against the deficiencies discussed in paragraph 16, and CELEBRITY should have known of these standards/recommendations/other guidelines because whether such standards/recommendations/other guidelines are legally required for CELEBRITY to comply with or not, a fact-finder is entitled to determine, if it so choses, that these standards/recommendations/other guidelines show what a reasonable cruise line should have done.

f. CELEBRITY also knew or should have known of these dangerous conditions through inspecting the subject area involved in BERMAN'S incident, and if it did not know of these dangerous conditions, this was because CELEBRITY failed to adequately inspect the subject area prior to BERMAN'S incident.

g. Previous passengers in prior cases suffered prior incidents involving chairs on

CELEBRITY'S ships and ROYAL CARIBBEAN CRUISES, LTD.'S ships (CELEBRITY'S parent company) that implicated dangers similar to the dangers BERMAN encountered, including, but not limited to, *Lobegeiger v. Celebrity Cruises, Inc.*, No. 11-21620-CIV, 2012 WL 12844731, at *2 (S.D. Fla. Apr. 6, 2012), *D'Antonio v. Royal Caribbean Cruise Line, Ltd.*, 785 F. App'x 794, 798 (11th Cir. 2019) ("Specifically, we agree with D'Antonio that a reasonable jury, viewing the CCTV footage in the light most favorable to D'Antonio, could conclude that D'Antonio tripped on a chair leg that extended into the path of the walkway."), *Odom v. Royal Caribbean Cruises, Ltd.*, No. 18-24780-CIV, 2019 WL 7370425, at *1 (S.D. Fla. Sept. 12, 2019).

h. Moreover, CELEBRITY knew or should have known of these dangerous conditions for other reasons that will be revealed through discovery.

19. At all times relevant, the subject area was unreasonably dangerous, risk-creating, defective, improperly designed, improperly installed, and/or otherwise unsafe.

20. The subject area and the vicinity lacked adequate safety features to prevent or minimize BERMAN'S incident and/or injuries.

21. These hazardous conditions were known, or should have been known, to CELEBRITY in the exercise of reasonable care.

22. These hazardous conditions existed for a period of time before the incident.

23. These conditions were neither open nor obvious to reasonable passengers, including BERMAN, and CELEBRITY failed to adequately warn BERMAN of the dangers. CELEBRITY failed to provide reasonable warnings such as, for example, a warning cone in the subject area that was

not obscured in a location BERMAN could not see. The dangerous conditions that CELEBRITY needed to warn BERMAN of are those discussed in paragraph 16(a-e).

24. At all times relevant, CELEBRITY failed to adequately inspect the conditions discussed in paragraph 16(a-e), as well as the subject area and the vicinity, for dangers. For example, CELEBRITY was required, by its own policies and procedures, to inspect the subject area in certain intervals of time to ensure that lounge chairs therein were not unreasonably protruding. However, CELEBRITY failed to inspect the subject area during the intervals its own policies and procedures required, thereby causing it to be unable to address the unreasonable protrusion of the subject chair prior to BERMAN'S incident.

25. At all times relevant, CELEBRITY had the ability to remedy the dangerous conditions, but failed to do so. For example, CELEBRITY could have removed or blocked off the subject lounge chair that was unreasonably protruding, but failed to do so. The dangerous conditions that CELEBRITY needed to remedy are those discussed in paragraph 16.

26. At all times relevant, CELEBRITY failed to maintain the conditions discussed in paragraph 16(a-e) in a reasonably safe condition. For example, CELEBRITY failed to perform regular upkeep on the subject area, including, but not limited to, by failing to apply and to regularly apply material that would keep the subject lounge chair more firmly planted on the ground such that it would not have been able to be moved into the walking path of passengers as easily as it was.

27. At all times relevant, CELEBRITY participated in the design and/or approved the design of the subject area and/or owned the subject lounge chairs.

28. At all times relevant, CELEBRITY participated in the installation and/or approved the installation of the subject area and/or the lounge chairs in the subject area.

29. The crewmembers of *the Summit* were in regular full-time employment of CELEBRITY and/or the ship, as salaried crewmembers.

30. CELEBRITY'S crewmembers, employees, and/or agents were subject to the ship's discipline and master's orders, and CELEBRITY had the right to hire and fire its crewmembers, employees, and/or agents.

31. CELEBRITY is directly responsible and liable for their actions and the actions of its crewmembers, employees, and/or agents.

32. The crewmembers, including the medical staff, were employees and/or actual agents and/or apparent agents of CELEBRITY, and acted within the course and scope of their employment and/or agency agreement and/or relationship.

33. The crewmembers were represented to BERMAN and the ship's passengers as employees of CELEBRITY through signs, documents, and/or uniforms. The crewmembers were also paid a salary and/or hourly wage by CELEBRITY. CELEBRITY knew that the crewmembers represented themselves to be employees of CELEBRITY and allowed them to represent themselves as such. BERMAN detrimentally relied on these representations as BERMAN would not have proceeded on the subject cruise had he believed the crewmembers were not employees of CELEBRITY.

## COUNT I
## NEGLIGENT FAILURE TO INSPECT

34. BERMAN hereby adopts and re-alleges each and every allegation in paragraphs 1-22 and 24-25 as if set forth herein.

35. CELEBRITY owed a duty to exercise reasonable care under the circumstances for the safety of its passengers.

36. This duty includes, but is not limited to, the duty to provide its passengers reasonable

care by adequately inspecting the conditions discussed in paragraph 16(a-e), as well as the subject area and the vicinity, for dangers.

37. At all times material, CELEBRITY, through its vessel, crew, agents, employees, staff and/or representatives, who were acting in the course and scope of their employment and/or agency with CELEBRITY breached the duty of reasonable care owed to BERMAN and were negligent by failing to adequately inspect the conditions discussed in paragraph 16(a-e), as well as the subject area and the vicinity, for dangers, such that the unreasonably risk creating and/or dangerous conditions discussed in paragraph 16(a-e) were present at the time of BERMAN'S incident.

38. CELEBRITY either knew or should have known of these risk-creating and/or dangerous conditions, due to reasons that include, but are not limited to, the reasons discussed in paragraph 18.

39. These risk-creating and/or dangerous conditions were caused by CELEBRITY'S failure to adequately inspect the conditions discussed in paragraph 16(a-e), as well as the subject area and the vicinity.

40. CELEBRITY'S breach was the cause in-fact of BERMAN'S great bodily harm in that, but for CELEBRITY'S breach BERMAN'S injuries would not have occurred.

41. Furthermore, the subject area and the vicinity were also on a cruise ship in the water subject to numerous maritime conditions such as the ship's movement, additional wear-and-tear due to maritime conditions not necessarily present on land, waves, and other conditions unique to maritime travel, and as such were "clearly linked to nautical adventure."

42. CELEBRITY'S breach proximately caused BERMAN great bodily harm in that the incident that occurred was a foreseeable result of CELEBRITY'S breach.

43. As a result of CELEBRITY'S negligence, BERMAN has suffered severe bodily

injuries resulting in pain and suffering, disability, scarring, disfigurement, mental anguish, loss of independence, lost earning capacity, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, and loss of the value of BERMAN'S vacation, cruise, and transportation costs.

44. The losses are permanent and/or continuing in nature.

45. BERMAN suffered these losses in the past and will continue to suffer such loses in the future.

**WHEREFORE**, Plaintiff, JACQUELINE BERMAN, demands judgment against Defendant, CELEBRITY CRUISES, LTD., for damages suffered and costs incurred, as well as for damages and costs that BERMAN will suffer and incur in the future, as a result of his bodily injury, pain and suffering, disability, disfigurement, scarring, mental anguish, hospitalization, medical care and treatment, nursing care and treatment, lost earning capacity, loss of important bodily functions, loss of independence, and loss of capacity for the enjoyment of life, for all court costs, pre- and post-judgment interest, and for any and all other relief which this Court deems just or appropriate.

## COUNT II
## NEGLIGENT FAILURE TO MAINTAIN

46. BERMAN hereby adopts and re-alleges each and every allegation in paragraphs 1-22 and 25-26 as if set forth herein.

47. CELEBRITY owed a duty to exercise reasonable care under the circumstances for the safety of its passengers.

48. This duty includes, but is not limited to, the duty to provide its passengers reasonable care by adequately maintaining the conditions discussed in paragraph 16(a-e).

49. At all times material, CELEBRITY, through its vessel, crew, agents, employees, staff

and/or representatives, who were acting in the course and scope of their employment and/or agency with CELEBRITY, breached the duty of reasonable care owed to BERMAN and were negligent by failing to adequately maintain the conditions discussed in paragraph 16(a-e), such that the unreasonably risk creating and/or dangerous conditions discussed in paragraph 16(a-e) were present at the time of BERMAN'S incident.

50. CELEBRITY either knew or should have known of these risk-creating and/or dangerous conditions, due to reasons that include, but are not limited to, the reasons discussed in paragraph 18.

51. Moreover, these risk-creating and/or dangerous conditions were caused by CELEBRITY'S failure to adequately maintain the conditions discussed in paragraph 16(a-e).

52. CELEBRITY'S breach was the cause in-fact of BERMAN'S great bodily harm in that, but for CELEBRITY'S breach BERMAN'S injuries would not have occurred.

53. Furthermore, the subject area and the vicinity were also on a cruise ship in the water subject to numerous maritime conditions such as the ship's movement, additional wear-and-tear due to maritime conditions not necessarily present on land, waves, and other conditions unique to maritime travel, and as such were "clearly linked to nautical adventure."

54. CELEBRITY'S breach proximately caused BERMAN great bodily harm in that the incident that occurred was a foreseeable result of CELEBRITY'S breach.

55. As a result of CELEBRITY'S negligence, BERMAN has suffered severe bodily injuries resulting in pain and suffering, disability, scarring, disfigurement, mental anguish, loss of independence, lost earning capacity, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, and loss of the value of BERMAN'S vacation, cruise, and transportation costs.

56. The losses are permanent and/or continuing in nature.

57. BERMAN has suffered these losses in the past and will continue to suffer such losses in the future.

**WHEREFORE**, Plaintiff, JACQUELINE BERMAN, demands judgment against Defendant, CELEBRITY CRUISES, LTD., for damages suffered and costs incurred, as well as for damages and costs that BERMAN will suffer and incur in the future, as a result of his bodily injury, pain and suffering, disability, disfigurement, scarring, mental anguish, hospitalization, medical care and treatment, nursing care and treatment, lost earning capacity, loss of important bodily functions, loss of independence, and loss of capacity for the enjoyment of life, for all court costs, pre- and post-judgment interest, and for any and all other relief which this Court deems just or appropriate.

## COUNT III
## NEGLIGENT FAILURE TO REMEDY

58. BERMAN hereby adopts and re-alleges each and every allegation in paragraphs 1-22 and 25 as if set forth herein.

59. CELEBRITY owed a duty to exercise reasonable care under the circumstances for the safety of its passengers.

60. This duty includes, but is not limited to, the duty to provide its passengers reasonable care by adequately remedying the dangerous conditions discussed in paragraph 16.

61. At all times material, CELEBRITY, through its vessel, crew, agents, employees, staff and/or representatives, who were acting in the course and scope of their employment and/or agency with CELEBRITY, breached the duty of reasonable care owed to BERMAN and were negligent by failing to adequately remedy the dangerous conditions discussed in paragraph 16.

62. CELEBRITY either knew or should have known of these risk-creating and/or

dangerous conditions, due to reasons that include, but are not limited to, the reasons discussed in paragraph 18.

63. Moreover, these risk-creating and/or dangerous conditions were caused CELEBRITY'S failure to adequately remedy the dangerous conditions discussed in paragraph 16.

64. CELEBRITY'S breach was the cause in-fact of BERMAN'S great bodily harm in that, but for CELEBRITY'S breach BERMAN'S injuries would not have occurred.

65. Furthermore, the subject area and the vicinity were also on a cruise ship in the water subject to numerous maritime conditions such as the ship's movement, additional wear-and-tear due to maritime conditions not necessarily present on land, waves, and other conditions unique to maritime travel, and as such were "clearly linked to nautical adventure."

66. CELEBRITY'S breach proximately caused BERMAN great bodily harm in that the incident that occurred was a foreseeable result of CELEBRITY'S breach.

67. As a result of CELEBRITY'S negligence, BERMAN has suffered severe bodily injuries resulting in pain and suffering, disability, scarring, disfigurement, mental anguish, loss of independence, lost earning capacity, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, and loss of the value of BERMAN'S vacation, cruise, and transportation costs.

68. The losses are permanent and/or continuing in nature.

69. BERMAN has suffered these losses in the past and will continue to suffer such losses in the future.

**WHEREFORE**, Plaintiff, JACQUELINE BERMAN, demands judgment against Defendant, CELEBRITY CRUISES, LTD., for damages suffered and costs incurred, as well as for damages and costs that BERMAN will suffer and incur in the future, as a result of his bodily injury,

pain and suffering, disability, disfigurement, scarring, mental anguish, hospitalization, medical care and treatment, nursing care and treatment, lost earning capacity, loss of important bodily functions, loss of independence, and loss of capacity for the enjoyment of life, for all court costs, pre- and post-judgment interest, and for any and all other relief which this Court deems just or appropriate.

## COUNT IV
## NEGLIGENT FAILURE TO WARN OF DANGEROUS CONDITION

70. BERMAN hereby adopts and re-alleges each and every allegation in paragraphs 1-23 as if set forth herein.

71. At all times relevant, CELEBRITY owed a duty to exercise reasonable care under the circumstances for the safety of its passengers, including BERMAN.

72. Such duty includes, but is not limited to, the duty that CELEBRITY owes to warn passengers of any dangers that it knew or should have known were not open and obvious to BERMAN.

73. Such duty also includes, but is not limited to, the duty to warn passengers of hazards, which passengers may reasonably be expected to encounter.

74. At all times material, CELEBRITY, through its vessel, crew, agents, employees, staff and/or representatives, who were acting in the course and scope of their employment and/or agency with CELEBRITY, breached the duty of reasonable care owed to BERMAN and was negligent by failing to warn BERMAN of the dangerous conditions discussed in paragraph 16(a-e).

75. Furthermore, CELEBRITY knew or should have known of these dangerous conditions for the reasons discussed in paragraph 18.

76. These dangerous conditions were also created by CELEBRITY.

77. CELEBRITY failed to adequately ensure there were no dangerous conditions that

passengers needed to be warned of, and/or CELEBRITY failed to warn BERMAN despite knowing of the dangers.

78. These dangerous conditions existed for a period of time before the incident.

79. These conditions were neither open nor obvious to BERMAN.

80. CELEBRITY'S breach was the cause in-fact of BERMAN'S great bodily harm in that, but for CELEBRITY'S breach BERMAN'S injuries would not have occurred.

81. Furthermore, the subject area and the vicinity were also on a cruise ship in the water subject to numerous maritime conditions such as the ship's movement, additional wear-and-tear due to maritime conditions not necessarily present on land, waves, and other conditions unique to maritime travel, and as such were "clearly linked to nautical adventure."

82. CELEBRITY'S breach proximately caused BERMAN great bodily harm in that the incident that occurred was a foreseeable result of CELEBRITY'S breach.

83. As a result of CELEBRITY'S negligence, BERMAN has suffered severe bodily injuries resulting in pain and suffering, disability, scarring, disfigurement, mental anguish, loss of independence, lost earning capacity, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, and loss of the value of BERMAN'S vacation, cruise, and transportation costs.

84. The losses are permanent and/or continuing in nature.

85. BERMAN has suffered these losses in the past and will continue to suffer such loses in the future.

**WHEREFORE**, Plaintiff, JACQUELINE BERMAN, demands judgment against Defendant, CELEBRITY CRUISES, LTD., for damages suffered and costs incurred, as well as for damages and costs that BERMAN will suffer and incur in the future, as a result of his bodily injury,

pain and suffering, disability, disfigurement, scarring, mental anguish, hospitalization, medical care and treatment, nursing care and treatment, lost earning capacity, loss of important bodily functions, loss of independence, and loss of capacity for the enjoyment of life, for all court costs, pre- and post-judgment interest, and for any and all other relief which this Court deems just or appropriate.

## COUNT V
## NEGLIGENT DESIGN, INSTALLATION, AND/OR APPROVAL OF THE SUBJECT AREA AND THE VICINITY

86. BERMAN hereby adopts and re-alleges each and every allegation in paragraphs 1-22, 25, and 27-28, as if set forth herein.

87. CELEBRITY negligently designed, as well as negligently approved of the design, of the dangerous conditions discussed in paragraph 16(a-e).

88. At all times material hereto, CELEBRITY owed a duty to its passengers, and in particular a duty to BERMAN, not to permit dangerous conditions to be in places where they could harm passengers, such as those discussed in paragraph 16(a-e), as well as to design and install reasonable safeguards.

89. At all times material hereto, CELEBRITY participated in the design process of the subject vessel by generating design specifications for the shipbuilder to follow, and to put the vessel on which BERMAN was injured into the channels of trade, and/or CELEBRITY approved of the subject vessel's design, including the design of the subject area and the vicinity.

90. At all times material hereto, CELEBRITY manufactured, designed, installed, and/or approved of *the Summit*, including providing specifications to the shipbuilder in the original build process, and/or during its refurbishments, and as such owed a duty to its passengers, and in particular a duty to BERMAN, to design, install and/or approve of the conditions discussed in

paragraph 16(a-e) without the deficiencies discussed in paragraph 16(a-e).

91. At all times material hereto, CELEBRITY through its agents and/or employees who were acting in the course and scope of their employment and/or agency with CELEBRITY, designed, installed, and/or approved of the subject area and the vicinity involved in BERMAN'S incident, which was also in violation of the applicable industry standards/recommendations and/or other guidelines.

92. CELEBRITY provides design elements of the vessels to the ship builder and/or approves of design elements which include the subject area and the vicinity.

93. CELEBRITY maintains the contractual right to participate, review, modify, and/or reject the design plans and drawings of the vessels, including *the Summit*, during the new build process.

94. CELEBRITY has the right to enter the ship and inspect it during construction to ensure that it is being constructed in accordance with the design specifications and has a right to insist on changes when safety concerns are identified.

95. CELEBRITY has the right to inspect and reject design elements before taking possession of the ship.

96. However, CELEBRITY permitted the dangerous conditions discussed in paragraph 16(a-e) to be present in the subject area and the vicinity without correcting these design deficiencies and did not design and install reasonable safeguards.

97. Furthermore, CELEBRITY knew or should have known of these dangerous conditions for the reasons discussed in paragraph 18.

98. The design flaws that made the subject area and the vicinity involved in BERMAN'S incident unreasonably dangerous were the direct and proximate cause of BERMAN'S injuries.

99. CELEBRITY is liable for the design flaws of the vessel, including of the subject area and the vicinity involved in BERMAN'S incident, which it knew or should have known of.

100. CELEBRITY failed to correct and/or remedy the defective conditions, despite the fact that CELEBRITY knew or should have known of the danger(s).

101. CELEBRITY'S breach was the cause in-fact of BERMAN'S great bodily harm in that, but for CELEBRITY'S breach BERMAN'S injuries would not have occurred.

102. Furthermore, the subject area and the vicinity were also on a cruise ship in the water subject to numerous maritime conditions such as the ship's movement, additional wear-and-tear due to maritime conditions not necessarily present on land, waves, and other conditions unique to maritime travel, and as such were "clearly linked to nautical adventure."

103. CELEBRITY'S breach proximately caused BERMAN great bodily harm in that the incident that occurred was a foreseeable result of CELEBRITY'S breach.

104. As a result of CELEBRITY'S negligence, BERMAN has suffered severe bodily injuries resulting in pain and suffering, disability, scarring, disfigurement, mental anguish, loss of independence, lost earning capacity, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, and loss of the value of BERMAN'S vacation, cruise, and transportation costs.

105. The losses are permanent and/or continuing in nature.

106. BERMAN has suffered these losses in the past and will continue to suffer such loses in the future.

**WHEREFORE**, Plaintiff, JACQUELINE BERMAN, demands judgment against Defendant, CELEBRITY CRUISES, LTD., for damages suffered and costs incurred, as well as for damages and costs that BERMAN will suffer and incur in the future, as a result of his bodily injury,

pain and suffering, disability, disfigurement, scarring, mental anguish, hospitalization, medical care and treatment, nursing care and treatment, lost earning capacity, loss of important bodily functions, loss of independence, and loss of capacity for the enjoyment of life, for all court costs, pre- and post-judgment interest, and for any and all other relief which this Court deems just or appropriate.

## DEMAND FOR JURY TRIAL

Plaintiff, JACQUELINE BERMAN, demands trial by jury on all issues so triable.

**Dated:** December 14, 2022.

Respectfully submitted,

*/s/ Spencer M. Aronfeld*
**Spencer M. Aronfeld, Esq.**
Florida Bar No.: 905161
aronfeld@Aronfeld.com
**Matthias M. Hayashi**
Florida Bar No.: 115973
mhayashi@aronfeld.com
**Abby H. Ivey, Esq.**
Florida Bar No.: 1002774
aivey@aronfeld.com
**ARONFELD TRIAL LAWYERS**
One Alhambra Plaza, Penthouse
Coral Gables, Florida 33134
P:   (305) 441.0440
F:   (305) 441.0198
***Attorneys for BERMAN***